UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**10 CIV 1267**

------------------------------------------------------X

THE ROYALTY NETWORK INC.,

                              Plaintiff,

          v.

CASH MONEY RECORDS, INC.,

                              Defendant.

------------------------------------------------------X

**Case No.**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**ECF CASE**

RECEIVED
FEB 17 2010
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, The Royalty Network Inc., by its attorney, Anthony Motta, as and for its

complaint against the defendant, Cash Money Records, Inc., alleges the following:

## PARTIES

1.       Plaintiff, The Royalty Network Inc., is a New York corporation with its principal

place of business at 224 West 30th Street, Suite 1007, New York, New York 10001.

2.       The defendant, Cash Money Records, Inc. ("Cash Money" or "defendant"), is a

Louisiana corporation authorized to do business in the State of New York with its principal place

of business in the State of Louisiana.

3.       Pursuant to a written co-publishing and administration agreement dated July 1,

2006 (the "Harrison Agreement"), plaintiff, through its unincorporated subdivision, Roynet

Music (ASCAP), is the co-publisher and copyright administrator of the musical compositions of

Darius Harrison and his publishing designee, Three Nails and a Crown (ASCAP) ("Harrison").

4.       The Harrison Agreement provides plaintiff with an undivided 50% interest in

musical compositions which Harrison owns or controls, in whole or in part, directly or indirectly

through an affiliate, including an affiliated corporation, and the exclusive right to collect all

monies derived from the remaining 50% interest of Harrison in the musical compositions.

## JURISDICTION

5.      Plaintiff is a New York corporation with its principal place of business in the

State of New York and defendant is a Louisiana corporation with its principal place of business

in the State of Louisiana, and as the matter in controversy exceeds, exclusive of interest and

costs, the sum of seventy-five thousand ($75,000) dollars, this court has subject matter

jurisdiction premised upon diversity of citizenship pursuant to 28 U.S.C. §1332(a).

## VENUE

6.      Venue of this case is proper in this district pursuant to 28 U.S.C. §§1391(a).

## FACTS COMMON TO ALL CLAIMS

7.      Upon information and belief, Dwayne Carter ("Carter") is a musical artist in the

hip-hop or urban music genre performing under the name "Lil Wayne".

8.      Beginning on or about June 10, 2008, defendant commercially released through

digital download and streaming media and in compact disc format an album embodying musical

performances by Carter entitled: *Tha Carter III* (the "Album").

9.      The Album was released in a number of different versions containing additional

tracks or bonus disk. Individual songs from the Album were also distributed as singles, on vinyl

records, via digital download and streaming media, as "ringtones" and "ringback tones" and

featured in music videos. The Album was the #1 selling release of 2008 selling well in excess of

3,000,000 units in the United States alone.

10.      Upon information and belief, Cash Money reproduced, manufactured, marketed,

promoted and distributed the Album or caused to have the Album reproduced, manufactured,

marketed, promoted and distributed by a third party record label and/or distributor.

11.     There is embodied upon the Album the musical composition entitled, "Mrs. Officer", which Harrison and plaintiff own or control, in whole or in part, directly or indirectly.

12.     Plaintiff and Harrison each have a twenty-five (25%) per cent interest in "Mrs. Officer" and plaintiff, as co-publisher and administrator, is entitled to collect fifty (50%) per cent of the publishing and mechanical royalties derived from "Mrs. Officer".

13.     "Mrs. Officer" was also featured in a music video, and sold and/or made available as streaming media, via digital download as a single, and as "ringtones" and "ringback tones".

### FIRST CLAIM AGAINST CASH MONEY

14.     On or about August 4, 2009 Cash Money entered into a Mechanical License Agreement (the "Mechanical License Agreement") with plaintiff granting to Cash Money a non-exclusive license to make and distribute phonorecords of the Album, and certain other products identified therein, embodying specified musical compositions in which plaintiff and Harrison have an interest, including the musical composition: "Mrs. Officer".  (A copy of the Mechanical License Agreement is attached as Exhibit A.)

15.     The Mechanical License Agreement provides that the specified  musical compositions are licensed by plaintiff to Cash Money at royalty rates specified in the Mechanical License Agreement.

16.     Paragraph 1 of the Mechanical License Agreement requires defendant to account and pay to plaintiff publishing and mechanical royalties within forty-five (45) days of each calendar year quarter on the basis of phonorecords made and distributed.

17.     Paragraph 3 of the Mechanical License Agreement provides, in part, that Cash Money commits a material breach of the Agreement if it fails to render timely accountings or make timely payments to plaintiff, and defendant fails to cure such failure within twenty (20) days after written notice from plaintiff.

18.     On December 18, 2009, plaintiff provided written notice to Cash Money under the terms of paragraph 3 of the Mechanical License Agreement that it was in material breach as it had failed to account and pay to plaintiff publishing and mechanical royalties derived from "Mrs. Officer" and accruing from the release of the Album up to and through the calendar year quarter ending September 30, 2009.

19.     Defendant failed to cure its default and to date defendant has failed to pay the royalties due on Mrs. Officer from sales of phonorecords under the Mechanical License Agreement and has failed to send to plaintiff all royalty statements due, with the result that plaintiff has failed to receive royalties and been damaged in an amount to be determined at trial, not less than $500,000.

## SECOND CLAIM AGAINST CASH MONEY

20.     Plaintiff repeats the allegations set forth in paragraphs 1 to 19.

21.     Pursuant to Copyright law, ringtones, ringback tones and the like, as well as music videos, are not subject to a compulsory license and are not covered by the Mechanical License Agreement. Rather, licensing procedures as well as publishing and mechanical royalties for ringtones and ringback tones are determined, at least in part, based upon royalty rates established by procedures under the U.S. Copyright Act.

22.     Defendant has failed to account to and pay to plaintiff any mechanical and publishing royalties for ringtones, ringback tones, and other phonorecord products of Mrs. Officer, despite demand that it do so.

23.     As a result plaintiff has been damaged in an amount to be determined at trial, not less than $500,000.

### THIRD CLAIM AGAINST CASH MONEY

24.     Plaintiff repeats the allegations set forth in paragraphs 1 to 23.

25.     The right to reproduce, distribute and sell phonorecords used in synchronization with visual images ("Music Videos") are subject to separately negotiated agreements between publisher and user.

26.     Upon information and belief, plaintiff has reproduced, manufactured, marketed, promoted and distributed Music Videos embodying "Mrs. Officer".

27.     Plaintiff has not licensed the use of "Mrs. Officer" for use in Music Videos.

28.     Defendant has failed to pay to plaintiff any fee or royalty for its portion of "Mrs. Officer" used in Music Videos.

29.     As a result plaintiff has been damaged in an amount to be determined at trial, not less than $250,000.

### FOURTH CLAIM AGAINST CASH MONEY

30.     Plaintiff repeats the allegations set forth in paragraphs 1 to 29.

31.     Cash Money have been unjustly enriched by its failure to pay the royalties due plaintiff in connection with "Mrs. Officer" .

5

32.     As a result, plaintiff has been damaged in an amount to be determined at trial, not less than $1,250,000.

**WHEREFORE,** plaintiff demands judgment:

a.) On its First Claim in an amount to be determined at trial not less than $500,000.

b) On its Second Claim in an amount to be determined at trial not less than $500,000.

c) On its Third Claim in an amount to be determined at trial not less than $250,000.

d) On its Fourth Claim in an amount to be determined at trial not less than $1,250,000.

e) On all of its Claims for interest from June 10, 2008 and its costs and disbursements.

f) For such other and further relief as the Court deems necessary, just and proper.

Dated: New York, New York
       February 16, 2010

ANTHONY MOTTA  (AM-1648)
Attorney for Plaintiff
50 Broadway, Suite 2202
New York, New York 10004
Tel:  (212) 791-7360
Fax: (212) 791-7468

# EXHIBIT A

MECHANICAL LICENSE

Date: August 4, 2009

Cash Money Records
C/o V. Brown & Company
888 Seventh Avenue
New York, N.Y. 10019

Composition: **See Attached Schedule A**

Words and Music By: **See Attached Schedule A**

Artist: Lil Wayne

Record Title/No: **Tha Carter III**

Release Date: May 13, 2008                    Timing: **See Attached Schedule A**

Royalty Rate: See Paragraph 2

Gentleman / Ladies:

We, The Royalty Network, Inc. o/b/o **Three Nails And A Crown / Roynet Music,** are the publisher who owns or controls **See Attached Schedule A** of the copyright or the mechanical recording rights of the above referenced work.

You have advised us, as publishers, that you wish to obtain a non-exclusive license to make and to distribute phonorecords of the copyrighted work referred to above under the compulsory license provision of Section 115 of the Copyright Act of the United States of America for the duration of the copyright, including all renewals and extensions thereof.

You shall have all the rights which are granted to, and all obligations which are imposed upon, users of said copyrighted work under the compulsory license provision of the Copyright Act after phonorecords of the copyrighted works have been distributed to the public in the United States under the authority of the copyright owner by another person, except that with respect to phonorecords thereof made and distributed hereunder:

     1) You shall pay royalties and account to us, quarterly within forty five (45) days after the end of each calendar quarter, on the basis of phonorecords made and distributed. Such statement shall set forth in reasonable detail the following items: (i) then name of the Composition; (ii) the record number; (iii) the configuration; (iv) the number of units distributed; (v) the royalty rate, and (vi) the royalties payable for the Composition.

2) For such phonorecords made and distributed, the royalty shall be the paid at the rate of seventy-five percent (75%) of the statutory rate in effect at the time each phonorecod is made and distributed with a so-called "cap" of fourteen (14) times the full statutory rate for each phonorecord. In the event the statutory rate is increased after the date hereof, the royalty payable to us hereunder shall be increased accordingly for phonorecords made and distributed after the effective date of such increased statutory rate.

3) Notwithstanding anything to the contrary, this Agreement will terminate automatically, without notice (if permitted under applicable law), if any of the following occurs:

(i)     You are dissolved or your assets are liquidated, or if you become insolvent.

(ii)    A bankruptcy proceeding for a reorganization or for other relief from its claims of creditors, or any similar proceedings takes place with respect to you or your assets.

(iii)   You cease doing business in the ordinary course and/or there is a substantial diminution in your ability to effectively carry on your business.

(iv)    You breach any of your material representations, warranties, covenants or obligations hereunder, or you fail to fulfill your material obligations hereunder; provided, however, that such breach is not cured within twenty (20) days from your receipt of our notice of such breach.

Failure to render timely accountings or make timely payments to us shall, if not cured by you within twenty (20) days after written notice thereof from us, constitute a material breach of this license entitling us, in addition to our other remedies, to immediately terminate this license and all rights granted to you hereunder. Such termination shall render either the making or the distribution, or both, of all phonorecords for which royalties have not been paid, actionable as acts of infringement under, and fully subject to, the remedies provided by the Act. A waiver of any breach hereunder shall not constitute a waiver of any succeeding breach, whether similar or dissimilar.

4) You shall maintain accurate books and records regarding the making and distribution of phonorecords hereunder. We, or our designee, shall at any time, upon reasonable written notice (but not more than once in each calendar year) and during regular business hours and at your usual place of business, have the right to examine and audit those books and records including, without limitation, relevant portions of statements from your distributor, and to make copies of the portions of those books and records relating to the making and distribution of phonorecords hereunder. Upon written request and during your regular business hours, you agree to make your books and records relating to the subject matter hereof available for audit by us.

5) This license covers and is limited to the one particular recording of said copyrighted work as performed by the artist and on the phonorecord numbers set forth above; and this license supersedes any prior agreements now in effect respecting phonorecords of said copyrighted work.

6) You need not serve or file the notice of intention to obtain a compulsory license required by the Copyright Act.

7) This license is limited to the territory of the United States, its territories and possessions.

8) On the label affixed to each phonorecord manufactured by you, you will include the title of the Composition, our name as publisher, the name of the performing rights society with which we are affiliated (ASCAP), and the last name of the writers, as set forth above.

9) You are hereby prohibited from: (a) using substitute lyrics, or creating parody, foreign or other lyrics for any of the Composition; (b) creating new arrangements of the Composition; (c) making any change in the fundamental character of the music of the Composition; or (d) using the Composition in whole or in part in connection with the works of others.

10) You shall procure from any co-owners of the copyright of the Composition any necessary mechanical licenses pertaining to their respective shares, and only their respective shares, thereof. You may not deduct from compensation payable to use hereunder any mechanical royalties or other sums payable to such third parties.

11) You may not assign or sublicense this Agreement, in whole or in part, without our prior written consent.

12) All royalties are paid to and in the name of The Royalty Network, Inc. o/b/o Three Nails And A Crown / Roynet Music (Tax ID#:11-3230735).

13) This agreement embodies the entire understanding with respect to its subject matter, and may be amended or modified only by a writing signed by the party to be charged. This Agreement shall be construed in accordance with the laws of the State of New York. If any portion hereof shall be deemed unlawful of unenforceable by a final order of a court having jurisdiction of the issue, such ruling shall not affect the other portions of this letter agreement not so adjusted. All notices hereunder shall be in writing, and shall be sent to the addressee by certified or registered mail, return receipt requested. Delivery shall be deemed to have occurred on the first attempted delivery thereof by the postal authorities on the date indicated on the signed receipt therefore, whichever shall be earlier.

14) It is expressly understood and agreed that the license granted hereunder in connection with DPDs is strictly limited to digital transmissions of the entire Composition via "general", "permanent" DPD transmission (as such terms are generally understood in the United States music industry), and this license does NOT authorize any other type of DPD creation, transmission or distribution, including by not limited to the methods referred to as "limited download" and "on-demand streams", as well as the any so-called "incidental DPDs" attendant to any transmission or distribution other than the general, permanent DPD transmissions referred to above.

**15) Upon commercial release of the recording, you will forward us two (2) copies of the Compact Disc for registration purposes.**

ACCEPTED AND AGREED TO:

**Schedule A**
0800754
1768758
1765518
1765519
1768754
1768755
1768756
176877

1768758

1783486

1783488

1783489

1783491

1784969

| Song Title / Writer / Publisher | %Share | Timing |
|---|---|---|
| Action<br>(Darius Harrison)<br>Three Nails And A Crown (ASCAP) / Roynet Music (ASCAP) | 50 | 5:27 |
| Let The Beat Build<br>(Darius Harrison)<br>Three Nails And A Crown (ASCAP) / Roynet Music (ASCAP) | 12.5 | 5:09 |
| Lollipop<br>(Darius Harrison)<br>Three Nails And A Crown (ASCAP) / Roynet Music (ASCAP) | 13.67 | 4:59 |
| Mrs Officer<br>(Darius Harrison)<br>Three Nails And A Crown (ASCAP) / Roynet Music (ASCAP) | 50 | 4:47 |
| Prostitute 2<br>(Darius Harrison)<br>Three Nails And A Crown (ASCAP) / Roynet Music (ASCAP) | 7.5 | 5:50 |
| Whip It | 50 | 5:59 |

Cash Money Records

The Royalty Network, Inc.
o/b/o Three Nails And A Crown / Roynet Music


By_____
An Authorized Signer

By_____
An Authorized Signer


C/o V. Brown & Company
888 Seventh Avenue
New York, N.Y. 10019

224 West 30th St., Suite 1007
New York, NY 10001

4

(Darius Harrison)
Three Nails And A Crown (ASCAP) / Roynet Music (ASCAP)